Cynthia J. ESTES, Appellant,

v.

**DEPARTMENT OF LABOR, State of Alaska, Appellee.**

No. 5033.

Supreme Court of Alaska.

Jan. 30, 1981.

Joel A. Rothberg, Alaska Legal Services Corp., Kotzebue, for appellant.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

Cynthia Estes filed an appeal with the Department of Labor, State of Alaska (hereafter Department), following denial of her application for unemployment insurance benefits. An appeals tribunal declined to decide the merits of her claim because it found that her appeal from the initial notice of determination of denial of benefits was not timely, and good cause for late filing was not shown. This decision was affirmed by the Commissioner of Labor and then by the superior court. Estes' motion for reconsideration by the superior court was denied and appeal was taken to this court. We reverse.

Resolution of the issue here requires application of AS 23.20.340(e) of the Employment Security Act and the Department's accompanying regulation, 8 AAC 85.150(a)(2)(B).[1] The statute and the regulation provide that an appeal from a denial of unemployment benefits must be filed within ten days after the notice of determination is mailed unless good cause for late filing is shown. We hold that, given the liberal construction mandate of the Employment Security Act, and the circumstances of this case, good cause existed to allow Estes an appeal on the merits.[2]

At the time of her appeal from the denial of benefits, Estes was a seventeen-year-old high school senior. She was living away from her parents and seeking work while she finished school. On January 23, 1978, the Department issued and mailed to her a notice of initial determination informing her that she had been denied unemployment insurance benefits. The notice specified the reasons for denial. It also stated that she had ten days from the date the notice was

---

1. AS 23.20.340(e) provides in part:
   The claimant or other party to the determination may file an appeal from the initial determination within 10 days after notification of the determination, or after the date the notice is mailed to his last known address.
   8 AAC 85.150(a)(2)(B) provides in part:
   An appeal must be filed within 10 days after personal notification of a determination on a claim for benefits or if notification is given by mail, 10 days after the date of mailing of the notification to the claimant's last known address, except that upon a showing of good cause for failure to file an appeal within the specified 10-day period, the period may be extended for a reasonable time.

2. Appellant has raised several statutory construction and constitutional arguments regarding the application of the statute and the regulation. Because we have decided that good cause existed to allow Estes' appeal, we do not reach these issues. However, we will comment briefly on the statutory construction argument. Estes argues that her appeal was timely because, under a proper construction of AS 23.-20.340(e), she had ten days from receipt of the notice of determination to appeal. While we agree with Estes that the statute is ambiguous, we feel that the Department's regulation correctly reflects legislative intent.

   AS 23.20.340(e) was repealed and reenacted in 1980. Ch. 9, § 52, SLA. The new section allows appeal "not later than 15 days after [claimant] is notified in person of the determination or redetermination or not later than 15 days after the date the determination or redetermination is mailed to [claimant's] last address of record." The new statute, while not entirely free from ambiguity, further supports the interpretation that the appeal period runs from the date of personal notification, or, if notice is mailed, from the date of mailing.

mailed to file an appeal, and gave instructions on how to file the appeal.[3]

Estes received this notice on or shortly before January 31, 1978.[4] According to the statute and the regulation, timely appeal would have to have been filed by February 2, 1978 (ten days from January 23, 1978, the date of mailing). However, Estes did not file her appeal from the denial of benefits until February 6, 1978, her next scheduled day to report to the unemployment office. Her appeal was therefore four days late.

On February 16, 1978, the Department issued a notice of hearing on her appeal for February 28, 1978. At the hearing, the appeal referee heard testimony on the timeliness issue and on the merits of Estes' appeal. Estes testified that, while she had not fully read the notice of determination, and thus did not read all of the information regarding her appeal rights, she was under the impression that she had ten days from the date she received the notice in which to appeal. Her regular report day was within that time, so presumably she believed that

her appeal was timely.[5] The referee decided that Estes had not shown good cause for her late appeal, and concluded that under the terms of AS 23.20.340(e) and 8 AAC 85.150 he lacked jurisdiction to decide the merits of her appeal.

Estes timely appealed this decision to the Commissioner of Labor, but the Commissioner affirmed the appeals tribunal. He concluded that Estes had an "affirmative responsibility to appraise herself of [the] contents" of the notice, and her failure to discharge that duty in a timely manner deprived her of her appeal right.

■ The Alaska Employment Security Act is a remedial statute with the primary purpose of "ameliorat[ing] the negative effects that involuntary unemployment has on both the unemployed individual and society as a whole." *State v. Boucher*, 581 P.2d 660, 662 (Alaska 1978). The Act specifically provides that its terms are to be liberally construed toward accomplishment of its purposes.[6] This mandate applies to the De-

3. The notice of determination which Estes received states on its face, "THIS DECISION IS FINAL UNLESS AN APPEAL IS FILED WITHIN TEN DAYS AFTER Date Mailed or Served." The notification showed the date mailed as 1/23/78. Directly below this statement is the line, "FOR APPEAL RIGHTS, SEE REVERSE SIDE OF THIS NOTICE." On the reverse side the notification states in part, "DO NOT WAIT TO FILE YOUR APPEAL UNTIL YOU PREPARE YOUR CASE, SEEK ADVICE, OR (IF A CLAIMANT) UNTIL YOUR NEXT REGULAR REPORT DAY, ..."

4. The exact date of receipt is unclear. According to Estes' testimony before the appeals tribunal, she received the notice on January 28 or 29, 1978. In his review of the appeals tribunal decision, the Commissioner of Labor found that receipt was on or before January 31, 1978.

5. In her testimony before the appeals tribunal, Estes indicated that she had not read the reverse side of the notice. Other items in the record suggest that she did not carefully read the notice or did not fully understand the ten-day limit for appeal. Her March 17 notice of appeal from the appeals tribunal decision states that she thought she had ten days from the time the notice was *received*. In another letter to the Commissioner of Labor she makes the same statement.

6. The purpose and policy sections of the Employment Security Act state in relevant part:
Sec. 23.20.005. *Purpose.* (a) This chapter shall be liberally construed to accomplish its purposes ... to provide through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment.
Sec. 23.20.010. *Policy.* As a guide to the interpretation and application of this chapter, the public policy of the state is declared to be as follows: Economic insecurity due to involuntary unemployment is a serious menace to the health, morals and welfare of the people of the state. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden and to maintain purchasing power as a factor in stabilizing the economy of the state. This can be accomplished by ... the systematic accumulation of funds during periods of employment, from which benefits may be paid for periods of involuntary unemployment. The legislature, therefore, declares that, in its considered judgment, the public good and the general welfare of the citizens of the state require the enactment of this measure, under the police power of the state, ... for the establishment of an employment security program to be used for the benefit of eligible unemployed persons.

partment's application of the appeal period and good cause provisions in the statute and regulation to Estes' appeal from the denial of benefits.

In a similar case considering good cause for an untimely appeal under the California Unemployment Insurance Code, the California Supreme Court noted the different positions of the parties involved in an appeal from a denial of unemployment benefits:

> "We deal here with the relations between an executive agency specifically and solely charged with the administration of a special and relatively technical law and one of the intended beneficiaries of that law. The law deals with a class of persons for whom the Legislature has expressed a particular concern and with a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, particularly dependent on the administrative agency to help them in securing the benefits that the law provides."

*Gibson v. Unemployment Insurance Appeal Board*, 9 Cal.3d 494, 509 P.2d 945, 947, 108 Cal.Rptr. 1, 3 (1973), *quoting Perez v. Unemployment Insurance Appeal Board*, 4 Cal. App.3d 62, 83 Cal.Rptr. 871, 873–74 (1970) (dissenting opinion).

In that case the court concluded that the inadvertent failure of an attorney to file the appeal in time constituted sufficient good cause to allow the appeal. The court noted that the statutory scheme "provided for an informal, nontechnical procedure for adjudicating claims," *id.* 509 P.2d at 948, 108 Cal.Rptr. at 4, which would not be furthered by a strict application of the rule such that even excusable inadvertence by the attorney would not constitute good cause.[7]

Similarly, the ten-day period should not be strictly applied to a claimant who inadvertently files late, particularly when the claimant had very little time to file a timely appeal. The ten-day appeal period established by the statute begins to run from the date the determination is mailed. Within that short time an applicant without legal training is expected to comprehend and determine the advisability of making an appeal, and then take appropriate action. Obviously, the vagaries of the postal system can sometimes leave a claimant with very little time in which to make a decision and act. It is understandable that under such circumstances a claimant may, through his or her own inadvertence, fail to file within the specified time limit.[8]

The record indicates that Estes had as little as two days in which to make a timely appeal.[9] She had no assistance of counsel during that time. Even she could have actually filed a timely appeal within that period, it was unreasonable under the circumstances to expect her to do so. Strict application of the ten-day period did not serve the purposes of the Employment Security Act in this instance. In fact, the short time she actually had to file the timely appeal could be considered good cause in itself for a late filing.

Admittedly, Estes may not seem a totally appropriate candidate for such treatment because her testimony indicates that she never fully informed herself of her appeal right as set out in the notice. However, even in these circumstances the Department should not strictly apply the rules to

---

7. The appeal provisions at issue in *Gibson v. Unemp. Ins. App. Bd.*, 9 Cal.3d 494, 509 P.2d 945, 947, 108 Cal.Rptr. 1, 3 (1973), were similar to the provisions at issue in this case. California Unemployment Insurance Code § 1328 (Deering 1971) provided in part:

> The claimant . . . shall be promptly notified of the determination and the reasons therefor and may appeal therefrom . . . within 10 days from mailing or personal service of notice of the determination. The 10-day period may be extended for good cause.

The statute was amended in 1975 and now provides 20 days in which to appeal. Cal.Unemp.Ins.Code § 1328 (Deering Supp.1980).

8. *See Gibson v. Unemp. Ins. App. Bd.*, 509 P.2d at 948, 108 Cal.Rptr. at 4; *Flores v. Unemp. Ins. App. Bd.*, 30 Cal.App.3d 681, 106 Cal.Rptr. 543, 545–46 (1973).

9. Estes received the notice on or before January 31, 1978. The appeal was due on February 2, 1978, ten days from the date the notice was mailed.

the detriment of a person the statute is intended to serve. Estes' testimony at the appeals tribunal and her subsequent correspondence indicates that she was under the impression that she had ten days from the date she received the notice in which to file her appeal. There is nothing in the record to suggest that she decided to appeal only after the ten-day period had passed. Rather, it appears that she fully intended to file a timely appeal and failed to do so only because she inadvertently misread the notice.

We believe that a finding of good cause in this case is particularly appropriate because the untimeliness of Estes' appeal caused no apparent prejudice to the Department. As discussed previously, the appeal in this case was only four days late. The appeals tribunal in fact heard the merits of her appeal, and presumably could have rendered a decision but for the referee's conclusion that there was no good cause for the late filing.

To summarize, the Alaska Employment Security Act exists in part to provide Unemployment Insurance to eligible unemployed persons. The purpose and policies of the Act are not served by strict application of the ten-day period in circumstances where a claimant had as little as two days to file a timely appeal; particularly when no apparent prejudice is caused to the Department by allowing the appeal.

The decision of the superior court upholding the decision of the Department of Labor is REVERSED, and this case is REMANDED to the superior court for proceedings consistent with this opinion.